IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FRANCES A. CHESTANG,          :
                              :
      Plaintiff,              :
                              :
v.                            :         CIVIL ACTION 05-0681-M
                              :
JO ANNE B. BARNHART,          :
Commissioner of              :
Social Security,             :
                              :
      Defendant.              :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 16).  Oral argument was heard on June 19, 2006.  Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.  *Richard-*

*son v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born November 15, 1955.  At the time of the administrative hearing, Chestang was forty-eight years old, had completed a high school education (Tr. 266), and had previous work experience as an environmental service worker (Tr. 267, 281).  In claiming benefits, Plaintiff alleges disability due to fibromyalgia, depression, mitral valve prolapse, vertigo, and rheumatic pain syndrome (Doc. 10).

The Plaintiff protectively filed applications for disability benefits and SSI on December 4, 2002 (Tr. 55-58; *see* Tr. 19). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Chestang could perform her previous relevant work as an environmental services assistant (Tr. 16-31).  Plaintiff requested review of the hearing decision (Tr. 14-15) by the Appeals Council, but it was denied (Tr. 4-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Chestang alleges that:  (1) The ALJ did not properly consider the opinions and diagnoses of her treating physician; (2) the ALJ incorrectly determined that there was no definitive diagnosis of fibromyalgia; (3) the ALJ improperly discounted her testimony of

2

pain; (4) the ALJ gave an improper hypothetical to the vocational expert; and (5) the ALJ improperly determined that she could perform her past relevant work (Doc. 10).  Defendant has responded to—and denies—these claims (Doc. 12).

Plaintiff's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's treating physician.  Chestang specifically references Dr. Mark A. McDaniel (Tr. 10, pp. 8-9). It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[1] *see also* 20 C.F.R. § 404.1527 (2005).

The evidence demonstrates that Dr. McDaniel first examined Chestang on February 10, 1997 and continued treating her through June 15, 2001 at which time Plaintiff lost her insurance and was no longer able to avail herself of the doctor's services (Tr. 144-74; *see also* Tr. 274-81).  The evidence demonstrates that McDaniel initially diagnosed Chestang to have arthralgias and myalgias following the patient's assertion of pain and that she had suffered a bout of rheumatoid four-to-five months earlier (Tr. 166).  Chestang saw the doctor approximately once a month

---

[1]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

over the following period of nearly three years and was treated for various complaints of pain, somnolence, a chest cold, rash, sore throat, sinus congestion/infection, depression, and insomnia; she was also continually monitored for a pre-existing problem with mitral valve prolapse (Tr. 152-66).[2]  On December 9, 1999, McDaniel treated Plaintiff for a suspected hematoma on her right lateral thigh (Tr. 152); on December 28, Chestang was experiencing unexpected menses and had had palpitations over the previous two days (Tr. 151).  Two weeks later, Plaintiff had nausea and was feeling lethargic (Tr. 151).  On February 9, 2000, Chestang complained of back stiffness because of a strong physical therapy session (Tr. 150).  Five weeks later, Plaintiff complained of stitches in her neck with spasms in her right shoulder though there were no problems with her other joints; McDaniel prescribed pain medication (Tr. 150).

On April 6, 2000, Dr. McDaniel completed a form on which he indicated that Plaintiff was continuously able to engage in fine manipulation of the left hand but only frequently with the right; furthermore, she could frequently reach and engage in simple or firm grasping (Tr. 127-28).  The doctor further indicated that Chestang could sit four-to-six hours, stand two-to-four hours, and walk two-to-three hours during an eight-hour day (Tr. 129).  McDaniel also found Plaintiff able to continuously lift up to ten

---

[2]The Court notes that Plaintiff asserted an onset disability date of December 10, 1999 (Tr. 56; Doc. 10 Fact Sheet).  As such, the Court will not herein summarize all of the records from the period of time leading up to that date, though they have been reviewed and considered.

pounds and occasionally up to twenty pounds, but never more than that; she could also carry ten pounds frequently and twenty pounds occasionally (Tr. 129).  The doctor thought that Chestang could climb, balance, stoop, crouch, kneel, and push and pull on an occasional basis but could never crawl (Tr. 129).

On April 27, 2000, Chestang complained of burning chest pain which the doctor suggested was likely to be GERD; McDaniels also noted depression (Tr. 149).  On May 23, the doctor noted Plaintiff's complaints of spasms all over, GERD, and nausea (Tr. 149).  The next examination was three months later when Chestang presented with complaints of chest pain on respiration and exertional dyspnea for two days; the doctor diagnosed pleurisy and vertigo and noted weight loss (Tr. 148).  The next examination was on January 26, 2001 at which time Plaintiff was complaining of a body itch (Tr. 148).  On March 13, Chestang had nausea and multiple complaints of pain; Dr. McDaniel noted that her right calf was swollen, tender to light palpation, and causing pain (Tr. 147).

On March 15, 2001, Dr. McDaniel completed a pain assessment form on which he indicated that Plaintiff's pain would distract her from adequately performing daily activities or work; he further noted that physical activity would greatly increase her pain which would either distract her or cause her to abandon work tasks or daily activities (Tr. 142).  Pain medication would severely limit her work effectiveness (Tr. 142).  The doctor also completed a physical capacities evaluation form in which he

indicated that Chestang could sit for two hours at a time and could stand and/or walk for less than two hours at a time; during an eight-hour day, Plaintiff could sit a total of four hours and stand and/or walk for less than two hours (Tr. 143).  McDaniel found her able to lift five pounds frequently, and twenty pounds occasionally; she could carry ten pounds occasionally, but never more than that (Tr. 143).  The doctor indicated that Plaintiff could never use arm controls on the right and could, only on occasion, bend, squat, reach and reach overhead; climbing and crawling were considered to be activities which she could engage in on a negligible basis (Tr. 143).

Plaintiff's leg was still bothering her on the next visit to the doctor on March 22 (Tr. 146).  McDaniel noted neck pain on May 18; on the last reported visit of June 15, 2001, Chestang was experiencing dizziness and nausea (Tr. 146).

The ALJ summarized the physical capacity forms and pain form completed by McDaniel (Tr. 22-23), but did not give them controlling weight because the conclusions conflicted with his own medical notes and the other evidence of record (Tr. 26). Without summarizing all of the other medical evidence, the Court finds that there is substantial support for the ALJ's conclusions.  Specifically, the reports of Dr. Joe Hardin (Tr. 140-41) and Dr. Thomasina Sharpe (Tr. 238-45) provide medical examination notes that fail to support the disability diagnosis that Dr. McDaniel asserts; though they represent only a single examination day each, their conclusions are vastly different from

those of McDaniel.  In addition, the Court notes that the Mobile
County Health Department provided records spanning October 1,
2001 through December 17, 2003; those records also fail to
support the severe limitations found by Dr. McDaniel (Tr. 175-
209, 230-37, 246-62).  Even the records of Dr. Gino DiVittorio,
which only post-date Chestang's onset date of December 10, 1999
by five months, fail to support such extreme limitation.
Plaintiff's claim otherwise is without merit.

Plaintiff next claims that the ALJ incorrectly determined
that there was no definitive diagnosis of fibromyalgia (Doc. 10,
pp. 2-9).  The ALJ, in clear terms, states this conclusion (Tr.
27).

In addressing this claim, the Court will quote a seventh
circuit case cited by Plaintiff (Doc. 10, p. 8) which discusses
fibromyalgia and makes the following observations:

> Its cause or causes are unknown, there is no
> cure, and, of greatest importance to
> disability law, its symptoms are entirely
> subjective.  There are no laboratory tests
> for the presence or severity of fibromyalgia.
> The principal symptoms are "pain all over,"
> fatigue, disturbed sleep, stiffness, and--the
> only symptom that discriminates between it
> and other diseases of a rheumatic character--
> multiple tender spots, more precisely 18
> fixed locations on the body (and the rule of
> thumb is that the patient must have at least
> 11 of them to be diagnosed as having
> fibromyalgia) that when pressed firmly cause
> the patient to flinch.

*Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).  In this
action, there is no indication that any physician has conducted

an eighteen-point check.  Doctor notes indicate complaints of pain, but do not indicate that the pain is severe; medical prescriptions for pain medications were to be taken on only an as needed basis.  Furthermore, the doctor's notes place no limitations on Plaintiff's activities.  The Court finds that the ALJ correctly found that there was no definitive diagnosis of fibromyalgia as no eighteen-point check has been conducted and placed in the record.[3]

Chestang next claims that the ALJ improperly discounted her testimony of pain.  The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the

---

[3]Plaintiff's attorney, at oral argument, asserted that Dr. McDaniel could not have diagnosed Chestang to have fibromyalgia without having performed the trigger point analysis.  While that may be true, the doctor's analysis does not appear in print and, therefore, does not provide the objective medical evidence necessary for the conclusion Chestang seeks.

courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).

The ALJ faithfully reported Plaintiff's testimony of pain and limitation at the evidentiary hearing (Tr. 266-81; *cf*. Tr. 21-22). The ALJ found that Chestang's testimony was not credible (Tr. 30, ¶ 5). The Court finds substantial support for that conclusion, noting that the medical evidence does not support her statements of pain and limitation. Acknowledging, as did the *Sarchet* Court, that fibromyalgia's symptoms are entirely subjective, the medical notes do not reflect the extreme limitation asserted by Plaintiff. This claim is of no merit.

Chestang's next claim is that the ALJ gave an improper hypothetical to the vocational expert (hereinafter *VE*). Plaintiff's argument focuses on the ALJ's failure to accept the conclusions reached by the VE in the hypotheticals which included the opinions of Dr. McDaniel as presented in the physical capacity forms and the pain questionnaire (Doc. 10, p. 11). The Eleventh Circuit Court of Appeals has held that an ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a VE to be reversible error where the ALJ relied on that expert's testimony in reaching a disability decision. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).

The Court notes that the ALJ asked the VE a hypothetical question in which the VE found that the person could perform the

work formerly performed by Chestang (Tr. 281-282).  Plaintiff's attorney then asked, on cross-examination, three hypothetical questions, two of which included the opinions expressed in the above-mentioned forms completed by Dr. McDaniel; in response to those questions, the VE stated that the person would not be able to work (Tr. 283-85).  The ALJ acknowledged the hypothetical questions posed by Plaintiff's attorney and the VE's responses, but rejected them as unsupported by the medical evidence of record (Tr. 29-30).  Relying on the VE's testimony, the ALJ found that Plaintiff could return to her past relevant work.

As found earlier in this Opinion while discussing another claim, the Court finds substantial support for the ALJ's determination that Dr. McDaniel's conclusions of disability are not supported by the medical evidence.  Raising the claim again here, albeit in a new and different form, give it no new life.

Chestang's final claim is that the ALJ improperly determined that she could perform her past relevant work.  The Court notes that Plaintiff has the burden of proving that she cannot perform her past relevant work.  *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (*citing Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).  With regard to a claimant's past work, the Eleventh Circuit Court of Appeals has held that

> [a]lthough a claimant bears the burden of demonstrating an inability to return to his past relevant work, the Secretary has an obligation to develop a full and fair record. *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  Where there is no

> evidence of the physical requirements and
> demands of the claimant's past work and no
> detailed description of the required duties
> was solicited or proffered, the Secretary
> cannot properly determine whether the
> claimant has the residual functional capacity
> to perform his past relevant work. *Nelms*,
> 803 F.2d at 1164.

*Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

Plaintiff completed a Social Security form which set out the physical requirements and duties of her various jobs (Tr. 88-94). The Court notes that Chestang gave a full, detailed summary of those five jobs, all of which included housekeeping services. The VE also testified to the physical requirements required for that job as it is normally performed (Tr. 281). After considering this evidence, the ALJ found that Plaintiff could return to her past relevant work (Tr. 30, ¶ 11). The Court finds substantial support for that conclusion.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgement will be entered by separate order.

DONE this 20th day of June, 2006.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

11